### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**ROBERT E. BARNETT**                                                          **PLAINTIFF**

**V.**                                      **4:08CV00018 JMM**

**CENTENNIAL BANK, INC.**                                      **DEFENDANT**


### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Pending is Centennial Bank, Inc.'s ("Centennial) motion to dismiss the Complaint for

lack of personal jurisdiction, or in the alternative, to transfer venue of the case to federal district

court in Utah.   Plaintiff Robert Barnett ("Barnett") has responded to the motion.  For the reasons

set forth below, the motion to dismiss for lack of personal jurisdiction is GRANTED.

Centennial obtained a default judgment against Barnett in the Second Judicial District

Court in Weber County, Utah.  Centennial, a Utah corporation, registered the default judgment in

Pulaski County Circuit Court located in Little Rock, Arkansas where Barnett is a resident.

Barnett alleges in his Complaint that the default judgment was void because the Utah court

lacked personal jurisdiction over him.  Further, Centennial knew that the default judgment was

void and registered the void judgment in Pulaski County for wrongful and ulterior motives, i.e.,

abuse of process and invasion of privacy.  Centennial moves the Court to dismiss this action

because the Court does not have personal jurisdiction over Centennial.  Barnett claims that the

Court has personal jurisdiction over Centennial by reason of its own actions in registering the

default judgment in Pulaski County.

### Discussion of the Law

While the facts adduced in a Rule 12(b)(2) Motion to Dismiss for lack of personal
jurisdiction must be viewed in the light most favorable to the party opposing the motion,
there must nonetheless be some evidence upon which a prima facie showing of

jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction.  This is the same standard as the one we apply on motions for summary judgment under Rule 56.

*Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir. 1992).  The Court

must look at the facts relevant to the issue of jurisdiction in the light most favorable to the non-

movant, give him the benefit of all reasonable inferences from these facts, and deny the motion

to dismiss if the record, viewed in this way, raises any genuine issue of fact material to the issue

of jurisdiction.

"To determine whether a court has personal jurisdiction over a nonresident defendant, we

ask two questions: (1) whether the applicable state long-arm statute . . . is satisfied; and (2)

whether a court's exercise of jurisdiction is consistent with the Due Process Clause of the

Fourteenth Amendment." *Minn. Mining and Manuf. Co. v. Nippon Carbide,* 63 F.3d 694, 696-97

(8th Cir. 1995).  The Eighth Circuit has recognized that the "Arkansas long-arm statute authorizes

jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process.

Therefore, our inquiry devolves into the single question whether the exercise of personal

jurisdiction comports with due process."  *Burlington Ind., Inc. v. Maples Ind., Inc.,*97 F.3d 1100,

1102 (8th Cir. 1996).

Due process requires a defendant to have such minimum contacts with the forum state

that the maintenance of a suit does not offend traditional notions of fair play and substantial

justice.  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  "Whether minimum

contacts are sufficient depends on whether the defendant, by some act, purposefully avail[ed]

itself of the privilege of conducting activities within the forum state, thus invoking the benefits

and protection of its laws.  This test is met if a defendant has deliberately engaged in activities,

such as having created continuing obligations, within a state, and such actions invoke the

benefits and protection of a state's laws." *Minn. Mining & Manuf.*, 63 F.3d at 697 (internal

citations omitted).

> Once it has been decided that a defendant purposefully established contacts with a forum
> state, these contacts must be considered in light of other factors to determine whether the
> assertion of personal jurisdiction would agree with fair play and substantial justice.
> There are three primary factors which are to be considered: (1) the nature and quality of
> the contacts, (2) the quantity of the contacts, and (3) the relation of the cause of action to
> the contacts.  In addition to those considerations, there are two secondary factors as well:
> the interest of the forum state in the litigation and the convenience or inconvenience of
> the parties.

*Id.*

According to the record, Centennial's only contact with Arkansas is the filing of the Utah

judgment against Barnett in Pulaski County.  Barnett argues that *Concrete Wallsystems of Ark.,*

*Inc. v. Master Paint Ind. Coating Corp.,*233 S.W.3d 157 (Ark. App. 2006) provides this Court

with the basis for asserting personal jurisdiction over Centennial in this action.  In *Wallsystems*, a

building contractor brought an action against a foreign corporation, Master Paint Industrial

Coating Corporation.  Master Paint had supplied a stucco-like material to the Arkansas

contractor.  The Arkansas contractor alleged that the material was defective and refused to pay

for the product.  Master Paint filed a materialman's lien against the contractor's real property in

Garland County Circuit Court in Hot Springs, Arkansas.  The contractor subsequently filed suit

against Master Paint in Garland County alleging that its product was defective and that the

product and the supplier's materialman's lien had caused him to suffer damages.

Master Paint had no contact with the State of Arkansas except for one trip to Hot Springs

to instruct the contractor on the product's application and the filing of the materialman's lien.

The Arkansas Court of Appeals found these contacts to be sufficient to show that Master Paint

had purposefully availed itself of the privilege of conducting activities in Arkansas and that

Master Paint could reasonably anticipate being haled into court in Arkansas because the filing of

a lien is the precursor to litigation.  *See e.g.,* Ark. Code Ann. § 18-44-127 (Repl. 2003)(providing

that a court shall ascertain by fair trial the amount of indebtedness for which the lien is

prosecuted and may render judgment).

The Court of Appeals in *Wallsystems* distinguished a similar case decided by the

Arkansas Supreme Court in 1998, *John Norrell Arms, Inc. v. Higgins,* 962 S.W.2d 801 (1998).

In *Higgins*, the Supreme Court found that a non-resident corporation's filing of a foreign

judgment lien in Arkansas did not provide the Arkansas courts with personal jurisdiction over

the non-resident corporation.  The Supreme Court stated:

> [I]t is clear that the only contact that Higgins had with Arkansas prior to the Norrell Arms
> complaint was the filing of an Oklahoma judgment against an Arkansas resident . . . and
> the issuance of a writ of execution based on that judgment.  We do not believe that such
> brief encounters with the State for purposes of enforcing a judgment are the type of
> continuous, systematic, and substantial contacts envisioned by the U.S. Supreme Court to
> satisfy due process considerations. . . .  If the registration of a foreign judgment alone is
> sufficient contact with a forum state, then every person who has ever registered a
> judgment in Arkansas is subject to suit in this State by any person claiming to have an
> interest in that property.  This would be so . . . even when the claim is by a third party not
> involved in the registered judgment and even when the property at issue is no where to be
> found.  That goes too far in our judgment. . . .

*Id.* at 805.

The Court agrees.  It goes too far to suggest that Centennial's registration of the Utah

judgment against Barnett in Pulaski County is sufficient alone to satisfy due process

considerations.  The Court finds that Centennial did not establish minimum contacts with the

State of Arkansas.  Further, the instant case is distinguishable from the *Wallsystems* case.  As the

Arkansas Court of Appeals noted, "the filing of a lien precedes further litigation.  The filing of a

foreign judgment, on the other hand, occurs at the conclusion of litigation and is frequently a

mere collection device employed after the issues have been resolved." *Wallsystems,* 233 S.W.3d

at 161.

For these reasons, the Court finds that it lacks personal jurisdiction over Centennial.  The

Motion to Dismiss (Docket # 3) is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 4th day of February 2008.


_____
James M. Moody
United States District Judge